**SO ORDERED.**

**SIGNED this 19th day of May, 2015.**



Dale L. Somers
United States Bankruptcy Judge

___

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

MONIC M. SMITH,

                DEBTOR.

CASE NO. 14-21191-13
CHAPTER 13

**OPINION DENYING THE DEBTOR'S AMENDED APPLICATION FOR ADDITIONAL ATTORNEY FEES TO BE PAID THROUGH HER PLAN**

This matter is before the Court for decision following a hearing on December 19, 2014, on the Debtor's amended application for additional attorney fees to be paid through her confirmed Chapter 13 plan. Chapter 13 Trustee W.H. Griffin objects to the application. The Debtor appears by counsel Hilliard L. Moore of Moore & Associates, LLC. The Trustee appears on his own behalf. The Court has reviewed the relevant materials, heard the parties' arguments, and is now ready to rule.

**Facts**

In May 2014, Monic Smith signed an agreement for Moore & Associates, LLC, to represent her in filing a Chapter 13 bankruptcy. The agreement called for the firm to be paid a flat fee of $2,950 for providing the following pre-confirmation services:

- All legal services and counseling regarding your bankruptcy case prior to filing your case.
- Advising creditors of legal representation if/when they call.
- Document review/drafting of the Chapter 13 Plan, petition, schedules, statements and related documents.
- Meeting with attorney and/or case manager to review and sign your case.
- Filing of the Plan, petition, schedules, statements and related documents with the Bankruptcy Court.
- Review Chapter 13 Trustee's requests for information and assistance with completing these requests
- Review and forward all documents requested to the Chapter 13 Trustee
- Preparation and legal representation at the 341 Hearing
- Legal advice and counseling immediately after your hearing
- Obtaining confirmation of your Chapter 13 Plan.

The agreement went on to specify certain services that might become necessary after the case was filed, and would require the Debtor to pay additional fees. Five items were listed as "Actions that Can Negatively Affect Your Case" and seven specific motions were listed under "Additional services that may be necessary after confirmation of your Chapter 13." Those items and any other extra work that might be necessary were to be charged at hourly rates, including $300 for Hill Moore and $250 for a staff attorney. The agreement said the firm would file a fee application with the Court for these services, and the Debtor could pay them directly to the firm or through her Chapter 13 plan payment, which might need to increase due to the additional fees.

The Disclosure of Compensation of Attorney for Debtor form that Mr. Moore filed, however, was not nearly as comprehensive as his fee agreement,[1] and the fee agreement itself was not filed with the Court. The Disclosure included most of the form's standard description of the legal services Mr. Moore had agreed to provide. Paragraph 5 of the Disclosure said:

> In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
> a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
> b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
> c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof.

Mr. Moore deleted subsection d. from the procedural form, though, which reads: "Representation of the debtor in adversary proceedings and other contested bankruptcy matters." Paragraph 6 of the form provides a space for specifying services that the debtor had agreed the attorney would not provide. There Mr. Moore inserted: "Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding."[2] This leaves out a number of services a

---

[1] The form is nearly identical to the Director's Procedural Form 203, a suggested form created by the Director of the Administrative Office of the U.S. Courts.

[2] The Court notes these exceptions seem more likely to arise in a Chapter 7 than a Chapter 13 case. If Mr. Moore intended for common Chapter 13 postpetition matters to be excluded from his initial fee, he would be well advised to expand his paragraph 6 exclusions to list matters that are likely to arise in a Chapter 13 case.

3

Chapter 13 debtor might be expected to need after filing bankruptcy, including such things as modifying the plan after confirmation, abating payments, and consulting with the attorney about how to handle things that might interfere with performing under the plan.  More specifically, as it turned out in this case, what to do about changes in the Debtor's mortgage payments caused by increases in the taxes and insurance for her home.  Mr. Moore's fee agreement attempts to exclude many such items from the initial flat fee the Debtor was being charged.  But since the Disclosure provided that Mr. Moore had agreed "to render legal service for all aspects of the bankruptcy case" except those listed in paragraph 6, the Disclosure instead must be read to say that the fee disclosed in it covered any services sufficiently related to the Debtor's bankruptcy case to be considered an "aspect" of the case, except for the services specifically described in paragraph 6.  By signing the Disclosure, Mr. Moore stated:  "I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding."

      The Debtor's bankruptcy petition was filed on May 20, 2014, and her plan was confirmed on July 25, 2014.  The plan provided for Mr. Moore's fees of $2,950 to be paid through the plan, and also stated:  "Counsel for Debtor reserves the right to submit additional fee applications, but payment is subject to Court approval.  Debtor consents to such increases in Plan payments as may be necessary to pay any approved additional fees."  The order confirming the plan did not mention Mr. Moore's fees, but approved the plan as originally filed.  The order provided that the Debtor was not to incur any

4

additional debts during the pendency of the plan without prior approval from the Court or the Trustee except those necessary for the protection and preservation of life, health, or property. Neither the plan nor the order make clear whether prior approval was necessary for the Debtor to incur a debt for post-confirmation attorney fees.

On September 30, 2014, Mr. Moore filed an application for additional attorney fees, seeking $500 for consulting with the Debtor about home mortgage changes and credit rebuilding strategies. The application did not say when the services were provided or how much Mr. Moore was charging for his time. The Trustee objected. He complained that further disclosures were required, including a copy of the Debtor's fee agreement with the attorney and information showing that the fees were reasonable and necessary under the circumstances, and suggested the additional fees should have been included in the original fee request in the case.

On November 25, Mr. Moore filed an amended application for the fees, reporting that he had met with the Debtor for one hour on September 26 and for another hour on October 13 (two weeks after the original application was filed) to consult about home mortgage changes and credit rebuilding strategies, and asking to have $250 per hour allowed as postpetition administrative expenses to be paid through the Debtor's plan. The motion included this sentence: "While the home mortgage changes and credit rebuilding strategies may affect Debtor's bankruptcy, they are not an integral part of it."

The Trustee again objected. He complained that the fee agreement had not been provided, that the original fee disclosure provided pursuant to § 329(a) and Federal Rule

5

of Bankruptcy Procedure 2016(b) did not appear to exclude the additional services from the scope of the original fees, and that the original fees charged should have included discussions about the Debtor's home mortgage and credit rebuilding strategies. He added that the additional fees sought would extend the term of the Debtor's plan from just over 36 months to more than 40 months. At oral argument on December 19, 2014, the Trustee suggested an education course offered by his office would have provided the help the Debtor obtained from Mr. Moore. A few days before that hearing, Mr. Moore had provided the Trustee with a copy of his firm's fee agreement with the Debtor, and he gave the Court a copy during the hearing.

According to an affidavit the Debtor signed on December 23, 2014, she met with attorney Hill Moore on September 26, 2014, for one hour and again on October 13, 2014, for another hour. She said they discussed a number of issues. They talked about increases in her mortgage payment that were based on escrow increases for property taxes. Mr. Moore reviewed her tax return and determined she could not take the mortgage tax deduction because it did not exceed the standard deduction. She advised Mr. Moore that rebuilding her credit was very important to her for future credit and employment reasons, and he told her it could also improve the amount she paid for property insurance. Mr. Moore told her he could help with rebuilding credit but it would cost an additional $500 for him to do so, with those fees billed to her Chapter 13 plan. He ran a credit report and found her bankruptcy filing had improved her credit score but not enough to let her get competitive lending rates. Together, they identified three creditors

6

that had not updated their reporting to reflect the bankruptcy filing, and in the time between their two meetings, Mr. Moore found information that confirmed the creditors' reporting was not appropriate. Mr. Moore told her that her credit standing would be helped more if she obtained a secured credit card, which would require a deposit of about $500, and he found several lenders willing to offer her such a credit card. Mr. Moore explained some of the factors used in credit scores, the concept of credit capacity, and the importance of making consistent payments, continually using credit, and not carrying a balance from month to month. He also suggested some ways she could most effectively use her 2014 tax refund.

**Discussion**

The Debtor's amended fee application raises the question whether the services Mr. Moore provided (1) should have been covered by his firm's prepetition flat-fee agreement with the Debtor, (2) constitute postpetition services connected with the bankruptcy case that, "based on a consideration of the benefit and necessity of [the] services to the debtor," qualify as a postpetition administrative expense that is allowable under §§ 330(a)(4)(B) and 503(b)(2), or (3) arose from a postpetition transaction that was not sufficiently related to the Debtor's Chapter 13 case to qualify as an administrative expense. Before the Court can reach this interesting question, however, it must consider a procedural problem with Mr. Moore's request for these additional fees to be paid through the Debtor's plan.

7

Although the parties did not cite *In re Eland*,³ an opinion this Court issued a little more than a year ago, the decision points out a fatal shortcoming in Mr. Moore's amended fee application. Like this case, *Eland* involved a Chapter 13 attorney's post-confirmation application for additional fees and expenses. The initial Disclosure of Compensation of Attorney for Debtors the attorney filed was nearly identical to the one Mr. Moore filed in this case, and no fee agreement was filed with it. The disclosure said the attorney had agreed to accept $4,000 for representing the debtors, but his post-confirmation application sought another $2,980 in addition to the original fee. The application included a detailed listing of the time the attorney claimed to have spent working on the case: 20.5 hours before filing the debtors' bankruptcy petition, 12.4 hours from the petition date to the plan confirmation date, and 2.0 hours after confirmation. The trustee⁴ objected, contending the Disclosure limited the attorney to the initial $4,000 fee except for the types of work it excluded, which the trustee argued covered only 5.5 of the post-petition hours claimed. The attorney responded by filing an amended Disclosure of Compensation with his fee agreement attached. This Court ruled the initial Disclosure controlled, and refused to consider either the amended Disclosure or the fee agreement. Section 329 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016(b) require debtors' attorneys to disclose their fee arrangements with the debtors. The Court said:

---

³Case No. 12-22394-13, 2014 WL 718264, Memorandum Opinion and Judgment Granting in Part the Post-Confirmation Application of Debtors' Counsel for Attorney Fees (Bankr. D. Kan. Feb. 24, 2014) (Somers, J.).

⁴Mr. Griffin was the Chapter 13 trustee in that case, just as he is in this one.

> The disclosure requirements of § 329 are mandatory, not permissive. They enable the Bankruptcy Court to carry out its traditional role of scrutinizing carefully the compensation paid to the debtor's attorney. The Court, the Chapter 13 Trustee, and creditors must rely upon the completeness and accuracy of the disclosures, since they are the only information provided about the compensation of the debtor's counsel. The disclosure rules are applied literally, even if the results are sometimes harsh. A fee applicant must disclose the precise nature of the fee arrangement.[5]

Mr. Moore has not provided any details concerning his post-confirmation meetings with the Debtor beyond saying they spent two hours discussing changes in the Debtor's mortgage payment and her desire to rebuild her credit standing. Assuming for a moment that these matters both concerned "aspects" of the Debtor's bankruptcy case, the Court finds they do not fit into the categories Mr. Moore listed in paragraph 6 of his Disclosure as matters that were not covered by the initial $2,950 fee: "Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding." Therefore, they would have been covered by the initial fee, and could not be allowed as an additional administrative expense.

On the other hand, the Court is not convinced all the services concerned "aspects" of the bankruptcy case. Because the Debtor needed to continue to pay her mortgage in order to have a place to live while she performed under her plan, the Court believes her discussions with Mr. Moore about the mortgage changes did constitute an aspect of her bankruptcy case, and that portion of Mr. Moore's services must be deemed to be covered by the initial flat fee his firm charged the Debtor. However, while the Debtor wanted to

---

[5] *Eland, slip op.* at 6-7, 2014 WL 718264 at *3 (quotation marks and citations omitted).

9

Case 14-21191 Doc# 42 Filed 05/19/15 Page 9 of 12

rebuild her credit standing for future credit and employment purposes, she could continue to perform and complete her plan without doing so. The Court concludes that portion of their discussions was not sufficiently related to the Debtor's bankruptcy case to constitute an aspect of the case, and Mr. Moore's charges for that portion are simply a postpetition debt not covered by the fee stated in the Disclosure. This conclusion raises a difficult question about this debt.

As indicated, in the Debtor's plan, Mr. Moore reserved the right to submit additional fee applications, with payment subject to the Court's approval. The order confirming the plan, however, advised the Debtor not to incur any new debts without the prior approval of the Court or the Trustee unless the debt was one to protect and preserve life, health, or property. Together, these provisions indicate either that any subsequent debt the Debtor might incur to her attorney was not covered by the new-debt prohibition, or that the Debtor might freely incur a new debt to Mr. Moore only in order to protect her life, health, or property. As the Debtor's attorney, Mr. Moore must be deemed to have been aware of these provisions, and should have been careful not to help the Debtor violate the confirmation order's restriction. Rebuilding the Debtor's credit standing was concerned with her financial circumstances, just as her bankruptcy case is, but the Court can't accept that it was necessary to protect the Debtor's life, health, or property. Consequently, the debt for Mr. Moore's services in that regard were not permissible under the confirmation order.

But the Court is also not willing to punish Mr. Moore for failing to realize the

10

Court would conclude that something concerning the Debtor's financial circumstances was not sufficiently related to her bankruptcy case to be allowable as a post-confirmation administrative expense under § 503(b)(2). As a result, the Court will allow Mr. Moore to have a valid claim against the Debtor for the portion of his $500 in additional fees that is attributable to his discussion with the Debtor of rebuilding her credit standing, even though that debt cannot be paid through the Debtor's plan. The information Mr. Moore has provided is not sufficient, however, to enable the Court to declare how much of the $500 in fees was attributable to that discussion.

**Conclusion**

For these reasons, the Court finds it must deny Mr. Moore's amended fee application. His discussion with the Debtor about the changes in her mortgage payment must be deemed to be an aspect of her case that was not excluded from the fee stated in his Disclosure. Consequently, he cannot try to recover that part of his fee request from the Debtor either as a Chapter 13 administrative expense or directly from the Debtor outside of her bankruptcy case. However, because his discussion with the Debtor about rebuilding her credit standing was not an aspect of her bankruptcy case, it was not covered by the fee included in his Disclosure. Furthermore, because that discussion was not sufficiently connected with her bankruptcy case to be allowable under § 330(a)(4)(B) as a Chapter 13 administrative expense, he cannot collect it through her plan. On the other hand, these circumstances do not prohibit him from seeking to collect the portion of his fees that is attributable to the discussion of the Debtor's desire to rebuild her credit

11

standing directly from the Debtor herself. That portion of his fee is simply a postpetition obligation the Debtor incurred.

# # #